# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) LEE A. ROACH, | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 20-cv-195-GKF-JFJ |
| (1) LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) Attorney Lien Claimed |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff Lee A. Roach, for his cause of action against Defendant Life Insurance Company of North America ("LINA"), alleges and states as follows:

### I.   Jurisdiction and Venue

1.  Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover benefits due under an employee benefit plan, and to recover costs and attorney's fees as provided by ERISA.

2.  This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. Under 29 U.S.C. § 1132(f), this Court has jurisdiction without regard to the amount in controversy or the citizenship of the parties.

3.  Venue is properly in this district pursuant to 29 U.S.C. § 1132(e)(2), in that the breach took place in this district, and pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

### II.   Parties and Plan

4.  Plaintiff is a sixty (60) year-old man who resides in Tulsa, Oklahoma and within this judicial district.

5.  At all relevant times, Plaintiff was employed by Helmerich & Payne, Inc. ("H&P")

and worked as a Welder.

6.     H&P provided long term disability ("LTD") insurance coverage to its eligible employees through a welfare benefit plan (the "LTD Plan"). At all relevant times, Plaintiff was eligible to participate in the LTD Plan, did participate in the LTD Plan, and was a participant in the LTD Plan within the meaning of 29 U.S.C. §1002(7).

7.     The LTD insurance coverage applicable to Plaintiff through the LTD Plan was pursuant to a group insurance policy underwritten and issued by LINA, Policy No. LK-961230 (the "LTD Policy").

8.     LINA is a foreign insurance company having its principal place of business in Philadelphia, Pennsylvania. At all relevant times, LINA was licensed and authorized to sell insurance within the State of Oklahoma and it transacts business within the State of Oklahoma and within this judicial district.

9.     The LTD Policy issued by LINA to H&P established an "insurer administration" relationship between LINA and the LTD Plan, pursuant to which benefit determinations with respect to Plaintiff's LTD claim were made by LINA and all monies to be paid to Plaintiff by virtue of his LTD claim were to be paid by LINA.

10.    At all relevant times, LINA was and is a Plan fiduciary within the meaning of 29 U.S.C. §1002(21)(A).

11.    The LTD Policy defines "**disability**" as follows:

**Disability/Disabled**

The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

1.     unable to perform the material duties of his or her Regular Occupation; and

    2.    unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:

    1.    unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and

    2.    unable to earn 60% or more of his or her Indexed Earnings.

12. With respect to the any-occupation definition of disability, the LTD Policy does not define the term "material duties."

13. With respect to the any-occupation definition of disability, the LTD Policy does not contain any provision whereby an occupation's "material duties" shall be determined solely by reference to the U.S. Department of Labor's *Dictionary of Occupational Titles* ("DOT").

14. Pursuant to the terms of the LTD Policy, the gross monthly disability benefit payable to a disabled H&P employee was 60% of the employee's monthly Covered Earnings.

15. For a claimant whose disability begins before age 62, the Maximum Benefit Period is the claimant's Social Security Normal Retirement Age ("SSNRA").

16. The LTD Plan and related LTD Policy do not contain any provision wherein discretion is expressly reserved to LINA to determine benefit eligibility or entitlement.

17. Accordingly, a *de novo* judicial review applies to Plaintiff's claim.

### III.    Allegations Applicable to All Claims

18. Plaintiff began working as a Welder for H&P in December 2012.

19. Prior to his employment with H&P, Plaintiff had worked as a Welder going back to 1995.

20. Plaintiff earned a high school diploma but never went to college. Other than

welding classes at Tulsa Welding School in 1979, Plaintiff has not taken any other professional or vocational-related classes.

21. Plaintiff did not use a computer as a Welder.

22. Plaintiff did not and does not use computer programs or software outside of work.

23. As of April 2013, Plaintiff's rate of pay was $18.50 per hour for a 40-hour work week. Accordingly, Plaintiff's annualized rate of pay was $38,480.00 and his base monthly earnings were $3,206.67.

24. Plaintiff last worked for H&P on April 25, 2013. While in a training class at work, Plaintiff had a heart attack. He was transported to the hospital and thereafter hospitalized until May 15, 2013.

25. In late May 2013, as a consequence of the heart attack and related symptoms and limitations imposed by his cardiac condition, Plaintiff initiated a claim for LTD benefits.

26. LINA investigated Plaintiff's LTD claim and, after some fits and starts, approved the claim for payment commencing October 23, 2013. The principal basis for the claim approval was that Plaintiff could never do the duties of his Welder occupation because of an implanted PCD defibrillator.

27. At a claim staffing done on February 17, 2014, the noted claim strategy was to run a Transferable Skills Analysis ("TSA") to see if Plaintiff might be able to perform the duties of any occupation. If yes, the plan was to pursue medical records during an anticipated future any-occupation investigation. If not, the plan was to pursue a possible claim buy-out.

28. The requested TSA was done by a LINA-employed rehabilitation specialist on February 27, 2014. The reported findings were that two occupations were within Plaintiff's transferable work skills. The two occupations were Bench Assembler (DOT code 706.684-022)

and Gate Guard (DOT code 372.667-030).

29. By letter dated April 17, 2015, LINA notified Plaintiff that his LTD claim was approaching the change in definition to any-occupation disability. LINA advised that it was undertaking a review to determine Plaintiff's continuing entitlement to LTD benefits pursuant to the any-occupation definition.

30. By letter dated September 16, 2015, LINA advised Plaintiff that benefits would not be paid beyond October 22, 2015 because Plaintiff was purportedly non-responsive to LINA's requests for information.

31. In its letter dated September16, 2015, LINA advised Plaintiff that he could appeal by submitting an appeal review request within 180 days of his receipt of the claim denial letter.

32. Plaintiff timely appealed LINA's adverse claim decision by submission of a handwritten note dated February 2, 2016.

33. By letters dated May 26, 2016 and June 13, 2016, LINA acknowledged receipt of Plaintiff's appeal.

34. By letter dated July 19, 2016, LINA advised Plaintiff that it was unable to complete the review on his appeal because the "initial review" on his claim was never completed. LINA advised Plaintiff that the matter was being returned to the original claim manager who would purportedly perform an initial review to determine Plaintiff's entitlement to LTD benefits pursuant to the any-occupation definition.

35. Thereafter, LINA took no further action toward completing the "initial review" purportedly required.

36. In April 2018, LINA received medical records from Plaintiff in relation to what he thought was a still pending "initial review" on his entitlement to benefits pursuant to the any-

occupation definition.

37. By letter dated April 27, 2018, LINA requested that Plaintiff explain in writing why he was submitting medical records since his claim was closed in 2015. LINA also requested that Plaintiff complete pertinent forms and return them.

38. In late July 2018, Plaintiff responded to LINA's request. Plaintiff submitted a letter dated June 18, 2018 wherein he explained that he previously appealed in February 2016 and the medical records submitted were in relation to an instruction he received from LINA to submit medical records to it. Plaintiff also provided LINA with the completed forms requested.

39. To Plaintiff's understanding, LINA took no action in response to his submissions and explanations.

40. Following LINA's continued inaction, Plaintiff submitted an appeal letter dated October 10, 2018.

41. By letter October 16, 2018, LINA acknowledged receipt of Plaintiff's appeal letter and again asked Plaintiff to explain why his appeal was submitted more than 180 days after LINA's last-issued denial letter.

42. Plaintiff responded by letter dated October 30, 2018 and reminded LINA that he had timely appealed in February 2016.

43. Prompted by Plaintiff's correspondence in October 2018, LINA finally initiated a review on the merits of Plaintiff's claim for benefits pursuant to the any-occupation definition of disability.

44. In the any-occupation claim review process, LINA requested and received a copy of Plaintiff's disability claim file from the Social Security Administration ("SSA").

45. In particular, LINA received a copy of the SSA's Disability Determination

Explanation ("DDE") dated December 27, 2013. The DDE reflected a vocational-related finding that Plaintiff's skilled work as a Welder was not transferable to a sedentary occupation.

46. By letter dated March 18, 2019, LINA notified Plaintiff that it had evaluated his entitlement for LTD benefits beyond October 23, 2015, and found that he was not disabled pursuant to the any-occupation provision of the LTD Policy.

47. LINA's decision was founded on a TSA done by a LINA-employed rehabilitation specialist on January 17, 2019. The TSA purportedly relied on information about Plaintiff's education, training, and work history and concluded that Plaintiff was able to perform the material duties of two sedentary physical level occupations – Dispatcher, Maintenance Service (DOT code 239.367-014) and Industrial Order Clerk (DOT code 221.367-022).

48. By letter dated March 18, 2019, Plaintiff initiated an appeal.

49. LINA responded by requesting external physician file reviews from doctors with specialties in cardiology and occupational medicine. The responding physicians collectively affirmed that: (1) Plaintiff was functionally impaired, (2) he could not do the duties of a Welder, but (3) he had the physical functional ability to perform sedentary-level work.

50. LINA requested another of its rehabilitation specialists to conduct a TSA. The appeal-related TSA was done on June 27, 2019. Like the TSA done in January 2019, the appeal-related TSA purportedly relied on information about Plaintiff's education, training, and work history to conclude that he was able to perform the material duties of Dispatcher, Maintenance Service (DOT code 239.367-014) and Industrial Order Clerk (DOT code 221.367-022).

51. By letter dated July 3, 2019, LINA advised Plaintiff that it was reaffirming its decision to stop paying LTD benefits beyond October 22, 2015. According to LINA's letter, the accumulated claim file records and information were insufficient to establish a disability under the

Plan's any-occupation definition.

52. In its letter dated July 3, 2019, LINA advised Plaintiff he could submit a voluntary appeal if he disagreed with its adverse decision.

53. Plaintiff timely submitted his voluntary appeal by letter dated January 3, 2020.

54. In his voluntary appeal, as related to his claim for LTD benefits pursuant to the any-occupation definition of disability, Plaintiff urged that LINA's decision to stop paying benefits after October 2015 was wrong and unprincipled because the TSAs relied upon were materially flawed.

55. In support of his voluntary appeal, Plaintiff submitted more current and reliable O*NET occupational information. The submitted O*NET information about the material duties of the Dispatcher, Maintenance Service and Industrial Order Clerk positions evidenced and confirmed that both require significant computer technology skills.

56. Plaintiff urged in his voluntary appeal that LINA's TSAs were predicated on out-of-date information from the DOT and that the out-of-date DOT did not acknowledge the significant computer skills inherent in the two occupations Plaintiff was purportedly qualified for – Dispatcher, Maintenance Service and Industrial Order Clerk.

57. Plaintiff also urged in his voluntary appeal that the TSAs did not note or incorporate into the analysis the fact that Plaintiff lacked basic computer skills.

58. Plaintiff further urged in his voluntary appeal that the TSAs were flawed because the rehabilitation specialists did not receive and consider the DDE, which reflected the SSA's finding that Plaintiff's skilled work as a Welder was not transferable to a sedentary occupation.

59. By letter dated March 11, 2020, LINA denied Plaintiff's voluntary appeal.

60. With respect to the vocational component of Plaintiff's voluntary appeal, LINA

reaffirmed the findings and conclusions of its earlier TSAs.

61. As reflected in LINA's letter dated March 11, 2020, it rejected Plaintiff's appeal without specifically addressing whether significant computer skills were inherent in the two occupations Plaintiff was purportedly qualified for – Dispatcher, Maintenance Service and Industrial Order Clerk.

62. As reflected in LINA's letter dated March 11, 2020, it rejected Plaintiff's appeal without specifically addressing whether Plaintiff's skills and work history rendered him qualified to perform sedentary occupations whose material duties required significant computer skills.

63. As reflected in LINA's letter dated March 11, 2020, it rejected Plaintiff's appeal without reconciling or explaining its transferable skills analysis to the contrary findings made by the SSA – that Plaintiff's skilled work as a Welder was not transferable to a sedentary occupation.

64. As reflected in its letter dated March 11, 2020, LINA further supported its rejection of Plaintiff's vocational-related appeal contentions by stating:

> While Mr. Shook continues to reference information obtained from O*NET, the standard classification system used by Cigna is the Dictionary of Occupational Titles.

65. LINA's denial letter dated March 11, 2020 did not identify or recite an LTD Plan or LTD Policy provision whereby the "material duties" assessment done during an any-occupation evaluation shall be determined solely by reference to occupational data found in the DOT.

66. The U.S. Department of Labor developed the DOT in 1938. The Department of Labor stopped updating the DOT in 1991. *See Social Security, Occupational Information System Project*, https://www.ssa.gov/disabilityresearch/ occupational_info_systems.html (last visited on May 6, 2020). Consequently, the DOT does not reflect current occupations and their requirements. *Id*.

67. LINA's refusal to consider Plaintiff's any-occupation claim by reference to more current and reliable occupational information than that found in the out-of-date DOT evidences its unreasonable review process and reflects an unreasonable decision.

68. LINA's reliance on flawed TSAs that failed to consider and address whether significant computer skills were inherent in the two occupations Plaintiff was purportedly qualified for evidences its unreasonable review process and decision.

69. LINA's reliance on flawed TSAs that failed to consider and address whether Plaintiff possessed or lacked basic computer skills evidences its unreasonable review process and decision.

70. Plaintiff has exhausted all administrative remedies under the Plan.

## IV.   Statement of Claims

### First Claim

### ERISA – Improper Denial of Benefits

71. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 70 of this Complaint as though set forth at length herein and further alleges:

72. At all relevant times the terms of the LTD Plan and related LTD Policy required payment of LTD benefits to Plaintiff due to his debilitating conditions and consequent inability to perform the material duties of any occupation for which he is, or may reasonably become, qualified based on education, training or experience.

73. LINA's failure to pay LTD benefits to Plaintiff beyond October 22, 2015 is contrary to the terms of the LTD Plan and LTD Policy, and is wrong, unreasonable, and not supported by the substantial record evidence.

74. Plaintiff seeks a declaration from this Court that he is entitled to the LTD benefits

due him under the terms of the LTD Plan and LTD Policy, in the amounts and for the duration consistent with the terms of the LTD Plan and LTD Policy, and an Order that all future disability benefits should be paid pursuant to the terms of the LTD Plan and LTD Policy.

75. Alternatively, because of LINA's wrong and/or unreasonable claim administration on Plaintiff's claim, particularly relating to Plaintiff's purported transferable skills and his purported qualification to perform the material duties of a Dispatcher, Maintenance Service or an Industrial Order Clerk, his LTD claim should be remanded back to LINA for additional, full and fair claim procedures.

76. By reason of LINA's wrong and/or unprincipled and unreasonable claim decision, Plaintiff has been forced to retain an attorney to secure disability benefits due him under the terms of the LTD Plan and LTD Policy, for which Plaintiff has and will incur attorney fees and costs. Plaintiff is entitled to recover the reasonable attorney fees and costs of this action pursuant to 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Plaintiff Lee A. Roach demands judgment against Defendant Life Insurance Company of North America:

(1) for a declaration that LINA wrongfully, erroneously, and/or unreasonably denied his claim for LTD benefits beyond October 22, 2015, and that he is entitled to receive the amount of benefits due under the terms of the LTD Plan that have not been paid, together with prejudgment and post-judgment interest thereon;

(2) for a declaration that all future LTD benefits be paid or maintained pursuant to the terms of the LTD Plan and LTD Policy; or

(3) for a declaration that LINA administered Plaintiff's claim in an arbitrary and capricious manner and/or denied Plaintiff a full and fair review on appeal, and that Plaintiff's LTD

claim should be reinstated and remanded for further claims procedures;

   (4) for the costs of this action and Plaintiff's attorney fees, pursuant to 29 U.S.C. §1132(g); and

   (5) for such other and further relief as may be deemed just and proper by the Court.

            **Respectfully submitted,**

            **SHOOK & JOHNSON, PLLC**

         **By:** **s/ Jonathan E. Shook**
            **Jonathan E. Shook, OBA #17343**
            **7420 S. Yale Avenue**
            **Tulsa, OK 74136**
            **(918) 293-1122 -** *Telephone*
            **(918) 293-1133 -** *Facsimile*
            **jshook@shookjohnson.com**

            **ATTORNEY FOR PLAINTIFF**